**MOORE NORTH AMERICA, INC., Plaintiff,**

v.

**THE STANDARD REGISTER COMPANY, Defendant.**

No. 98–CV–485C.

United States District Court, W.D. New York.

June 26, 2002.

Nixon & Vanderhye P.C., Arlington, VA (James D. Berquist, of Counsel), for Plaintiff.

Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Arlington, VA (Andrew M. Ollis, of Counsel), for Defendant.

### ORDER

CURTIN, District Judge.

On September 18, 2001, this court issued an order granting in part and de-

nying in part a motion by defendant Standard Register Company ("SRC") to compel discovery of information and documents relating to research and development efforts by plaintiff Moore North America, Inc. ("Moore") in the areas of pressure sensitive adhesives and pressure seal adhesives since the issuance of United States Patent No. 4,918,128 (the " '128 patent" or the "patent-in-suit") in 1990. *See Moore U.S.A. Inc. v. Standard Register Company,* 179 F.Supp.2d 78 (W.D.N.Y.2001). Specifically, the court granted SRC's motion to the extent it sought discovery relating to Moore's efforts to design an alternative to the pressure seal adhesive embodied by the patent, and denied the motion to the extent it sought discovery relating to Moore's recent research regarding the broader technology of pressure sensitive adhesives. The court directed Moore to produce "documents and information regarding its efforts to design and develop alternatives to the '128 adhesive." *Id.,* 179 F.Supp.2d at 80. With respect to the scope of production, the court held as follows:

> While *Warner–Jenkinson* [*Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) ] will only require Moore to produce information on research that took place in and around the time of SRC's alleged infringement of the '128 patent, the fact is that Moore claims ongoing infringement by SRC. Thus, the applicable scope of time continues to run and, as a result, may encompass any of Moore's efforts to design an alternative to the '128 adhesive.

*Id.*

Moore now seeks reconsideration of the court's September 18, 2001 order to the extent that it directed Moore to produce all documents and information relating to its pressure seal adhesives work from the time of issuance of the '128 patent in 1990 and continuing to the present (and beyond). According to Moore, the court's order misapplied the Supreme Court's holding in the *Warner–Jenkinson* case, and implementation of the order will require burdensome review and production of voluminous confidential files, thereby allowing SRC—its main competitor—access to its most proprietary and commercially sensitive information.

■ *Warner–Jenkinson* marked the Supreme Court's attempt to clarify the proper scope of the "doctrine of equivalents," under which a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention. *Warner–Jenkinson,* 520 U.S. at 21, 117 S.Ct. 1040 (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). In so doing, the Court held that, "[i]nsofar as the question under the doctrine of equivalents is whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency—and thus knowledge of interchangeability between elements—is at the time of infringement, not at the time the patent was issued." *Id.* at 37, 117 S.Ct. 1040. Based on this holding, this court determined that documents and information generated "in and around the time of the alleged infringement" regarding Moore's research and development efforts to develop alternatives to the '128 adhesive might lead to the discovery of admissible evidence pertaining to, among other things, "whether people of ordinary skill in the polymer art considered [methyl

methacrylate] and styrene to be equivalent." *Moore,* 179 F.Supp.2d at 80. In this court's view, since the underlying complaint alleges continuing infringement, the applicable scope of discovery should encompass Moore's continuing research and development efforts. *Id.*

According to Moore, this holding represents an "unprecedented and sweeping change to the law of equivalence" (Item 418, p. 4). Moore contends that the controlling case law regarding the relevant time period for determining equivalence limits the consideration—and discovery of information—to the time at which infringement began, not some later time during the alleged continuing infringement. Unfortunately for Moore, the only case which it has independently cited in its motion papers, *Micro Motion, Inc. v. Exac Corp.,* 741 F.Supp. 1426 (N.D.Ca.1990), was decided before *Warner–Jenkinson,* and actually provides further support for the court's determination that a claim of continuing "equivalence" infringement, countered by a claim of invalidity, encompasses the discovery by the accused infringer of information which might tend to show that the accuser itself was involved in the process of developing equivalent formulations at the time of the alleged infringement. *See Micro Motion,* 741 F.Supp. at 1434–35 (equivalence, and whether person of ordinary skill would have recognized it, determined as of time during which alleged infringement continued, not just as of time it began).

 Moreover, and more fundamentally, Moore's present motion for reconsideration represents at least the third time that this same discovery issue has been raised and decided in this case. Courts in the Second Circuit have repeatedly held that a motion for reconsideration is not to be used as a vehicle for wasteful repetition of argument already briefed, considered, and decided. *See, e.g., Torf v. Metromedia*

*Paging Services, Inc.,* 1996 WL 118559, at \*4 (E.D.N.Y. March 5, 1996) (citing *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990)). Indeed, the standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir.1995). As stated by the Second Circuit, the major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (quoting 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4478 at 790); *see also Peca v. Delta Air Lines, Inc.,* 2000 WL 914112, at\*1 (W.D.N.Y. July 7, 2000). No such grounds have been convincingly presented here.

Accordingly, Moore's motion (Item 401) for reconsideration of the court's September 18, 2001 order is denied. The parties shall meet and confer forthwith in an effort to establish a mutually agreed upon schedule for accomplishing the document production directed therein, as well as all other discovery remaining in the case. The proposed schedule shall be submitted to the court in writing no later than July 31, 2002, for the court's consideration as a joint stipulated discovery order to be entered on the docket.

So ordered.